IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MATT LYLE                            §
    TDCJ-CID #579954              §
                                 §
v.                                   §        C.A. NO. C-06-165
                                 §
LILLIAN GARZA, ET AL.                §

**MEMORANDUM AND RECOMMENDATION
TO DISMISS CERTAIN CLAIMS AND DEFENDANTS
AND TO RETAIN CASE**

In this civil rights action filed pursuant to 42 U.S.C. § 1983, plaintiff Matt Lyle claims that defendants conspired to retaliate, and did retaliate against him, for exercising his First Amendment right to file grievances and to complain to supervisors about certain defendants' conduct.

Pursuant to the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper.  Ruiz v. United States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam).  Plaintiff's *pro se* complaint must be read indulgently, see Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

Applying these standards, it is respectfully recommended that plaintiff's retaliation claims against Lillian Garza, Sandy Garza, and Warden Eileen Kennedy be retained on the Court's docket and service ordered on these defendants.  It is recommended that his retaliation claims against the

remaining defendants and his conspiracy claim be dismissed for failure to state a claim and as frivolous.  28 U.S.C. § § 1915(e)(2)(B) and 1915A(b)(1).

## I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II.  FACTUAL BACKGROUND

Plaintiff was formerly an inmate in the Texas Department of Criminal Justice, Criminal Institutions Divisions ("TDCJ-CID"), and at all times relevant to the facts of this lawsuit, was incarcerated at the McConnell Unit in Beeville, Texas.[1]  He filed this lawsuit on April 11, 2006, claiming that he had paid $1,200 in tuition to take a college class offered at the McConnell Unit, but eventually was not only expelled from the class, but was retaliated against by numerous McConnell Unit employees for complaining about certain aspects of the class.  (See D.E. 1, 31).  He alleges that, as a consequence of exercising his First Amendment right to complain about the instructor, Lillian Garza, and program coordinator, Sandy Garza, he was removed from his data processing vocation, barred from educational and scholastic programs for one year, removed from his job assignment as a librarian and placed in a field labor assignment, transferred from a safe dorm assignment to a "gang invested" environment, and transferred to a more restrictive unit (Segovia Unit).  (See D.E. 31 at 9).  A Spears[2] hearing was conducted on May 31, 2006, following which plaintiff was instructed to file a supplemental complaint.  On September 18, 2006, plaintiff filed his supplemental

---

[1] Plaintiff is no longer in prison.  (See D.E. 35).

[2], Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

complaint.  (D.E. 31).  He is now suing thirty-nine TDCJ-CID employees[3] in their official and individual capacities.  (See D.E. 31 at 1-4).  The following allegations were made in plaintiff's original complaint, (D.E. 1), supplemental complaint (D.E. 31), or at the hearing.

On September 9, 2003, plaintiff began a data processing class, sponsored by Coastal Bend College and conducted at the McConnell Unit.  He paid $1,200 tuition to take the class.  Defendant Lillian Garza, an instructor for Coastal Bend College ("CBC") and the TDCJ-CID, told him that a new policy prohibited students from taking the textbooks out of the classroom to their cells to study.  Plaintiff attempted to purchase the textbook or "sign" for it, but was not allowed to do so.  This information was confirmed by Sandy Garza, CBC program coordinator.

Plaintiff claims that he began to question who authorized the denial of the textbooks, and it was his questioning of the authority of Lillian Garza and Sandy Garza that lead to a conspiracy to retaliate against him and to the ultimate retaliation he experienced.  He claims that these two women solicited the help of Dorothy Kidd, Ramon Rodriguez, Kendall Gutherie, all Windham School District ("WSD") employees, and McConnell Unit Officer Jeffery Escamilla, and that they began a custom and practice of retaliating against him because he voiced a complaint against a teacher.

On November 18, 2003, plaintiff wrote to Warden Prasifka and defendant Susan Poole, with the Office of the Inspector General ("OIG"),  asking that they investigate why he could not take a textbook to his cell or purchase a textbook.  He received no reply.  He spoke to the WSD Regional Coordinator, Kendall Guthrie in late November, after a "hostile and fruitless interview" with Sandy Garza, but both of these individuals told him that he should stop complaining or he would regret it.

---

[3] At the evidentiary hearing, plaintiff alleged that all defendants are employed by the TDCJ-CID in some manner, despite also being college instructors or school district personnel.

3

On December 8, 2003, plaintiff wrote to Warden Prasifka and Ms. Poole again, but received no reply.  On January 9, 2004, plaintiff wrote Ms. Poole a three-page letter advising her of his confrontation with Sandy Garza and Mr. Guthrie.  He asked Ms. Poole to investigate his allegations, but he received no reply.

On January 16, 2004, plaintiff filed a Step 1 grievance against Lillian Garza alleging denial of textbooks outside of the classroom.  On January 23, 2004, W.S.D. Principal Ramon Rodriguez called him out of class to discuss the grievance.  His Step 1 grievance was denied.

On January 19, 2004, plaintiff wrote to John B. Gratton, Vice President of Instructional Services at CBC, complaining of the textbook issue.

On January 25, 2004, plaintiff filed a Step 1 grievance against Sandy Garza alleging denying of academic classes and textbooks.  This Step 1 grievance was denied.

On February 4, 2004, plaintiff was removed from his date processing vocation and his librarian job in the Education Department.  He was transferred to the field labor squad.  In addition, he was removed from the trustee dorm and assigned to 7-Building, which he contends is a gang strong-hold and a punishment cell with a leaking roof, loud TV, and a high traffic security door used day and night.  He did not receive a disciplinary case or notice prior to this new cell assignment.

On February 6, 2004, plaintiff was brought before a Unit Classification Committee ("UCC") lead by Major Fernandez and two civilian women.  Also in attendance was Dorothy Kidd, a WSD employee.  Ms. Kidd testified that she wanted plaintiff removed from her class, and he was expelled.

On February 9, 2004, plaintiff complained of his expulsion from classes to Felipe T. Alanis with the Texas Education Agency ("TEA").  Mr. Alanis passed the complaint to Pablo Carrasquillo, who passed the complaint to Ron Bradford.  Mr. Bradford forwarded plaintiff's complaint to Bob

Evans.[4]  Bob Evans denied the complaint.

On March 22, 2004, plaintiff wrote to Martha Ware, the Region IV grievance coordinator asking for help.  She forwarded the letter to Warden Stephens.  On April 3, 2004, Captain Miguel Martinez warned him to stop complaining; however, he was moved back to the trustee dorms.

On June 15, 2004, Captain Martinez offered plaintiff a job in the law library.  Plaintiff accepted it, and started the next day.  On June 24, 2004, Warden Kennedy told plaintiff he could no longer work at the library because he had done several things wrong.  Plaintiff had not received any notice that he had done anything wrong, nor did he receive any disciplinary cases.

On August 3, 2004, plaintiff was assigned to the kitchen cleaning pots despite his medical restrictions.  Captain Smith and Warden Kennedy made this decision.  Captain K. Ferrell told him that he must work in violation of his medical restrictions or receive a disciplinary case.

On August 17, 2004, plaintiff received a note from Sandy Garza denying him admittance to classes and stating that the UCC had suspended him for one year.

On an unidentified date, plaintiff was released from kitchen duty because Officer Belcher reviewed his medical form, HSM-18.  However, after plaintiff filed a grievance, grievance investigator Puentes alerted Warden Kennedy and he was again assigned a job in violation of his medical restrictions.

On March 29, 2005, plaintiff received a disciplinary case from Officer Garrison, whom plaintiff claims he never met.  The investigating officer, Sergeant DeLuna, falsified a statement.

On April 18, 2005, plaintiff asked Sergeant Barrios for a Step 1 grievance, and she responded

---

[4] Pablo Carrasquillo and Bob Evans are the only defendants plaintiff claims were not employed at the McConnell Unit in Beeville.  Mr. Carrasquillo is alleged to be a TEA program specialist in Austin, Texas, while Mr. Evans is alleged to be the WSD Director of Continuing Education and located in Huntsville, Texas.  (See D.E. 31 at p 2, ¶¶11, 13).

5

by threatening him with a strip search, confiscating his property, and writing him a false case for possession of contraband and refusing to obey an order.  Major Fernandez processed the case despite the illegal actions.  Grievance investigator Herrera told Sergeant Barrios not to worry about the grievance plaintiff filed against her.

On June 21, 2005, Officer J. Suniga approached plaintiff with a fist full of brass keys and threatened him while Officer Deleon came up behind him.  Before either officer could do anything, plaintiff ran to the fence and called for rank.  Officer Suniga wrote plaintiff a false disciplinary case.

On October 13, 2005, plaintiff submitted a grievance against Warden Kennedy that was returned as in excess of one per 7 days.  Plaintiff claims he waited and then resubmitted it, but never received a response.  Also on that date, Officer Gutierrez wrote a false disciplinary case against him.  Lieutenant Almandarez and Captain Martinez strip searched and threatened him.  At the disciplinary hearing, the charges were reduced to a minor infraction, and he was found guilty.  Plaintiff complained to Warden Crites, Mary Comstock, Major Gordy, and N. Jackson about the strip search incident.  These officials promised to investigate the matter, and Warden Crites said to write a statement.  When plaintiff presented the  written statement and evidence on October 31, 2005, Officer Deleon confiscated it and wrote plaintiff a case for contraband.  On December 1, 2005, both Warden Crites and Warden Jackson refused plaintiff's life in danger claim.

On an unidentified date, Sergeant Valdez served plaintiff with a disciplinary case but falsified the papers stating that he did not want to attend the disciplinary hearing.  Lieutenant Cirone falsified documents stating that he refused to attend the hearing.

Plaintiff testified that unknown members on the UCC transferred him to the Segovia Unit which plaintiff claims is a more restrictive unit than the McConnell Unit.

6

### III.  DISCUSSION

**A.     Legal Standard.**

It is well established that "[t]o state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam).  An action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no set of facts in support of his claim entitling him to relief.  Oliver v. Scott, 276 F.3d 736, 740 (5th Cir. 2002) (citation omitted).  The complaint must be liberally construed in favor of the prisoner, and the truth of all pleaded facts must be assumed.  Id. (citation omitted).

**B.     Official capacity claims and injunctive relief.**

Plaintiff has sued defendants in their official and individual capacities.  (See D.E. 31, at 4 ¶ 43).  He seeks monetary damages in the amount of $2000 against each defendant.  In addition, he sought injunctive relief to be discharged on October 29, 2006, rather than November 14, 2006, and an order to stop prison officials from denying him supplies.

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  The Eleventh Amendment bars a suit for money damages against a state or state agency.  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).  A judgment may not be entered against a state officer in his official capacity for violating federal law in the past.  Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

To the extent plaintiff is suing defendants in their official capacities for money damages,

those claims are barred by the Eleventh Amendment, and it is respectfully recommended those claims be dismissed.

Plaintiff's claims for injunctive relief have been rendered moot because he was transferred off the McConnell Unit, and, in addition, released from prison. See Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (no reasonable probability that injunctive relief concerns constitutional violations that are "capable of repetition yet evading review"). See also Cooper v. Sheriff, Lubbock County, Tex., 929 F.2d 1078, 1085 (5th Cir. 1991) (holding that an inmate's transfer from county jail to state prison rendered moot his claims for injunctive relief). Because he has already been released, his request to be released on an earlier date is moot. Similarly, his request that prion oficials be ordered to provide him with supplies is moot. It is respectfully recommended that his claims for injunctive relief be dismissed as moot.

## C.    Retaliation.

Plaintiff claims that defendants retaliated against him for exercising his First Amendment rights, in particular, for complaining to both prison and educational supervisors about Lillian Garza and Sandy Garza, and the regulation prohibiting the removal of textbooks from the classroom. He claims his complaint escalated into mass retaliation involving over thirty individuals, and a conspiracy to violate his rights.

To prevail on a claim of retaliation, an inmate must establish four elements: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998). The inmate must be able to point to a specific constitutional right that has been violated. Jones, 188 F.3d at 325. The inmate must allege more than his personal belief that he is

the victim of retaliation.  Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997).  Conclusory allegations of retaliation are insufficient.  Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).  The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.  Id. (citation omitted).  Causation requires an inmate to show that but for the retaliatory motive, the adverse action would not have occurred.  McDonald, 132 F.3d at 231.

In addition, the Fifth Circuit has recently held that an inmate's retaliation claim must allege more than a *de minimis* adverse act.  Morris v. Powell, 449 F.3d 682 (5th Cir. 2006).  In Morris, the plaintiff alleged that he had been assigned to a less desirable job in the kitchen, from pot scrubber to butcher, in retaliation for filing complaints about a commissary official.  Id. at 684.  After an appeal and remand, the district court found as a matter of first impression in this circuit that a prisoner must allege more than a *de minimis* retaliatory act to proceed with a claim of retaliation.  Id. The district court further found, without discussion, that Morris' alleged retaliation as evidenced by assignment to a less desirable job was *de minimis*, and dismissed his claim.  Id.

On appeal, the Fifth Circuit noted that, in the context of First Amendment claims, courts had often addressed the "quantum" of retaliation necessary to support a § 1983 claim.  Id. at 686.  It noted that the District of Columbia Circuit has held that an inmate's retaliation claim must allege acts that "would chill or silence a person of ordinary firmness from future First Amendment activities." Id. quoting Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc), vacated on other grounds, 523 U.S. 574 (1998).  The Fifth Circuit concluded that in Morris' case, even if the job transfers were motivated by retaliation and he suffered a few days discomfort, there was no evidence that the job transfers were more than *de minimis.*  Id. at 687.

9

### 1.     Lillian Garza and Sandy Garza.

Plaintiff has established the following: (1) he was enrolled in a college class; (2) he complained about the textbook restriction and the instructor; (3) he filed grievances against Lillian Garza and Sandy Garza; (4) Officer Escamilla warned him not to complain and told him that these defendants had gotten other inmates barred "from college forever;" and (5) he was expelled from the class and barred from taking classes for a year.  Plaintiff has established a chronology of events from which retaliation can be inferred.  McDonald, 132 F.3d 231.  He raised a complaint, filed grievances, and suffered what could be retaliatory actions toward him.  Moreover, the consequences complained of, expulsion and barred from taking classes for a year, are more than *de minimis*.  To not be able to participate in educational pursuits when otherwise qualified, based on prison classification and the ability to pay, is the type of retaliatory act that would chill or silence many individuals from speaking out.  Morris, 449 F.3d at 684.

It is respectfully recommended that the Court retain plaintiff's retaliation claim against Lillian Garza and Sandy Garza, and that service be ordered on these defendants.

### 2.     Warden Kennedy.

Plaintiff claims that Warden Kennedy "was the main force behind harassing and punishing me for filing the grievances against Sandy Garza and Lillian Garza."  (D.E. 31, at 17 ¶ 96). According to plaintiff, on February 15, 2005, Captain Nelson told him that he was known as the offender "who wouldn't stop complaining," that Warden Kennedy did not like it, and to "live and learn."  Id. at 14, ¶ 83.  He testified that he filed grievances against Warden Kennedy, but they were not processed.  He claims that Warden Kennedy was responsible for taking away his librarian job and having him placed in the field, and for having him removed from the trustee dorm.  He claims

that she ordered the "campaign of false [disciplinary] cases" filed against him.

Plaintiff's allegations survive § 1915A screening.  He has alleged that he exercised his first amendment right to complain about an issue and to file grievances, that Warden Kennedy was directly involved in the matter and did not like his complaining, that he filed grievances against her, and that he suffered more than *de minimis* consequences.  It is respectfully recommended that plaintiff's retaliation claim against Warden Kennedy be retained and service ordered on this defendant.

### 3.    Retaliation Claims Against Other Defendants.

Despite his detailed supplemental complaint, the facts as alleged by plaintiff and taken in the light most favorable to him, do not state a claim of retaliation as to as to the remaining defendants.  Primarily, plaintiff offers *no* retaliatory motive as to the other defendants.  He does not allege that he complained about ***them***, or filed grievances against ***them***, or had a history of conflict with ***them***.  Indeed, his allegation of retaliation is actually that Lillian Garza, Sandy Garza, and Warden Kennedy are so powerful, that the remaining defendants carried out their retaliatory orders to make his life miserable.  This allegation does not state a claim of retaliation against any of the other defendants, however, as they have no motive, and there is no chronology of events from which retaliation can be inferred.  In fact, for many of the defendants, there is but a single encounter of which he complains.

For example, plaintiff  wrote to Susan Poole on December 8, 2003, and January 9, 2004, complaining about the textbook issue and his problems with CBC, WSD, Sandy Garza and Kendall Guthrie; however, she never responded to his letters.  However, a prisoner has no constitutional right to have his grievances investigated.  See Beall v. Johnson, 54 Fed. Appx. 796, 796 (5th Cir. 2002)

(per curiam) (prisoner's allegation that he has a constitutionally protected right to have his grievance investigated and resolved is without merit because resolution of the grievance does not involve a "significant hardship ... in relation to the ordinary incidents of prison life.") (citing <u>Sandin v. Conner</u>, 515 U.S. 472, 485-86 (1995). <u>See also</u> <u>Taylor v. Cockrell</u>, 92 Fed. Appx. 77, 78 (5th Cir. 2004) (same).

Similarly, plaintiff complains that he wrote to Martha Ware, a Region IV grievance counselor, on March 22, 2004, and that she wrote to Warden Stephens advising him of plaintiff's complaints. He claims that Arthur Robinson, also a Region IV grievance counselor, had knowledge of the violations, and had the authority to stop Lillian Garza and Sandy Garza by granting his Step 2 grievances, but did not. Again, even if true, these allegations do not demonstrate that either Ms. Ware or Mr. Robinson retaliated against plaintiff. There is no chronology of events between plaintiff and these defendants to support a claim of retaliation.

Plaintiff claims that he sent a letter on February 9, 2004 to the TEA, and that Pablo Carrasquillo forwarded the complaint to Ron Bradford, who passed the complaint to Bob Evans, who denied it. He claims that he wrote John Gratton, Vice President of Instructional Services at CBC, a letter on January 19, 2004, complaining about the textbook issue and about Lillian Garza and Sandy Garza. He also claims that Mr. Gratton was their direct supervisor and knew of plaintiff's claim of retaliation, but refused to intervene. Plaintiff claims that he sent a letter on February 9, 2004 to the TEA, and that Pablo Carrasquillo forwarded the complaint to Ron Bradford, who passed the complaint to Bob Evans, who denied it. As discussed above, plaintiff has no constitutional right to a response to his grievance, let alone to a favorable response. Moreover, supervisory officials are not required to personally intervene or respond to every inquiry they receive, but may delegate their

responsibilities as appropriate.  See  Johnson v. Johnson, 385 F.3d 503, 526 (5th Cir. 2004).

Retaliatory motive cannot be inferred from the mere fact that plaintiff put others on notice of his

claims against Lillian Garza and Sandy Garza.

Plaintiff alleges that Ramon Rodriguez, WSD Principal, called him out of class on January

23, 2004 to discuss his grievance against Sandy Garza.  Being called out of a classroom does not

state a constitutional issue.  Similarly, plaintiff claims that he spoke to Kendall Guthrie, WSD

Regional Coordinator, about the textbook issue and that Mr. Guthrie told him to stop complaining.

This allegation fails to raise a constitutional issue.

Plaintiff claims that he complained to Warden Crites, Mary Comstock, Major Gordy, and

Warden Jackson about an October 13, 2005 strip search incident and that they failed to investigate

it.  Plaintiff claims that grievance investigators Hilga Silvas and Gilbert Herrera failed to investigate

his grievances.  Even if true, the failure to investigate a claim in and of itself does not amount

retaliation.

Plaintiff claims that Major Daniel Fernandez presided over the February 2004 UCC hearing

in which it was determined that he could no longer take vocation classes.  Plaintiff does not have

a protected liberty interest in his education courses.  Ketzel v. Trevino, 264 F.3d 1140, 1140 (5th

Cir. 2001) (per curiam) (citing Sandin v. Conner, 515 U.S. 472 (1995).  Thus, even if Major

Fernandez ruled against him in a hearing, the claim fails to state a constitutional violation.

Moreover, this single ruling regarding his educational placement does not show a chronology of

events from which retaliation can be inferred.

Plaintiff claims that Warden Stephens was contacted by Martha Ware after plaintiff

complained about being removed from his job and the trustee dorm, and that he ordered Captain

Martinez to talk to him.  As a result, plaintiff was returned to the trustee dorm.  That is, as a result of Warden Stephens' involvement, plaintiff was returned to the "better" dorm.  He fails to state a claim of retaliation against Warden Stephens.   He claims that Warden Castillo knew of his complaints but failed to take any action.  Again, the fails to allege any events to suggest that Warden Castillo's failure to act was motivated by retaliation.

Plaintiff claims that on January 23, 2004, Jeffery Escamilla advised him not to challenge Lillian Garza, warning that he would be "bar[red] from college forever."  (D.E. 31, at ¶ 64).  He states that in April, 2004, after losing his librarian job and trustee dorm, Officer Escamilla asked him what had happened, and plaintiff told him that Sandy Garza had led a conspiracy against him.  (D.E. 31, at ¶ 78).  According to plaintiff, Officer Escamilla then confessed that he had written a report indicating that Lillian Garza was afraid of him.  Id.  Plaintiff claims that Officer Escamilla thus retaliated against him by writing a false statement against him.  However, plaintiff admits that Officer Escamilla told him that Lillian Garza was in fact afraid of him: "She said she was afraid of you dog."  Id.  The fact that officer Ecamilla put this information in a report does not amount to retliation.  Moreover, Officer Escamilla attempted to warn plaintiff earlier not to challenge Lillian Garza.  Plaintiff fails to allege a chronology of events from which retaliation can be inferred as to Officer Escamilla.

Plaintiff also claims that Major Fernandez processed Sergeant Barrios' disciplinary case against him even though he knew it was false.  An inmate's allegation of factual innocence is not actionable under § 1983 if his disciplinary proceeding was otherwise fair and adequate.  Collins v. King 743 F.2d 248, 254 (5th Cir. 1984).  Plaintiff has not alleged any errors with his disciplinary proceeding, and he fails to state a claim against Major Fernandez.

14

Plaintiff claims that the following officers wrote false disciplinary cases against him, threatened him with bodily harm, subjected him to strip searches, or in other ways harassed him in retaliation for his filing grievances: Officer Garrison, Sergeant DeLuna, Sergeant Barrios, Officer Suniga,  Lieutenant Almandarez, Captain Martinez, Sergeant Valdez, Officer Gutierrez, and Lieutenant Cirone.  He claims that Warden Crites and Warden Jackson refused to investigate his life in danger complaint against Lieutenant Almandarez and Captain Martinez in retaliation for his filing grievances.  He claims that these officers worked at the direction of Warden Kennedy, Captain Smith, Captain Nelson, and Captain Ferrell.  He claims that Officer Deleon was "firmly aboard the conspiracy train" and that he and Officer Maldonado mocked him on February 4, 2004.

Plaintiff offers no motive to suggest that any of these officers acted in retaliation for him exercising his constitutional rights.  At best, he accuses them of following orders, allegedly given by Warden Kennedy, that might have been suspect.  Such allegations do not state a claim of retaliation.

Finally, plaintiff claims that two unknown female members on the UCC committee voted him out of vocation training in February 2004, and in the Fall of 2005, unknown UCC members voted him transferred to the Segovia Unit in retaliation for his filing grievances.  Plaintiff has  no constitutional interest in his prison unit assignment or in his vocational classification.  Carson v. Johnson, 112 F.3d 818, 821 (5th Cir. 1997).  Moreover, he fails to allege any chronology of events with these unnanmed individuals from which retaliation could be inferred.

It is respectfully recommended that plaintiff's claims of retaliation against all defendants, save and except Lillian Garza, Sandy Garza, and Warden Kennedy be dismissed with prejudice for failure to state a claim and as frivolous.  28 U.S.C. § § 1915(e)(2)(B) and 1915A(b)(1).

15

**D.     Conspiracy.**

Plaintiff claims that defendants acted in concert to retaliate against him.

To allege a claim of conspiracy to deprive one of his constitutional rights, a plaintiff must allege, (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprivation of any right or privilege of a citizen of the United States.  Hilliard v. Ferguson, 30 F.3d 649 (5th Cir. 1994). Where all of the defendants are members of the same collective entity, however, the conspiracy does not involve two or more people.  Hilliard, 30 F.3d at 653; see also Moody v. Jefferson Parish Sch. Bd., 803 F. Supp. 1158, 1166 (E.D.La.1992) (School Board, Principal, Vice-Principal, and various teachers are all employed by the Jefferson Parish School Board and, thus, are a single entity), aff'd, 2 F.3d 604 (5th Cir.1993); Hankins v. Dallas Indep. Sch. Dist., 698 F.Supp. 1323, 1330 (N.D.Tex. 1988) (high school and its officials constitute a single entity).

Plaintiff produces no facts, other than his personal belief, that there is a conspiracy, and such allegations fail to state a claim.  McAfee v. 5th Circuit Judges, 884 F.2d 221 (5th Cir. 1989) (conclusory allegations lacking reference to material facts are not sufficient to state a claim of conspiracy under section 1983).   Moreover, all defendants are members of the same collective entity, such that plaintiff fails to state a conspiracy claim.  Hilliard, 30 F.3d at 653.

It is respectfully recommended that plaintiff's conspiracy claim be dismissed with prejudice for failure to state a claim and as frivolous.  28 U.S.C. § § 1915(e)(2)(B) and 1915A(b)(1).

## IV.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that plaintiff's retaliation claims against Lillian Garza, Sandy Garza, and Warden Kennedy be retained and service ordered on these defendants.  It is respectfully recommended further that plaintiff's retaliation claims against the remaining defendants and his conspiracy claim be dismissed with prejudice for failure to state a claim and as frivolous.  28 U.S.C. § § 1915(e)(2)(B) and 1915A(b)(1).

Respectfully submitted this 5th day of December, 2006.


B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

17

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).